IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CARLTON ELLIS,<br><br>Petitioner,<br><br>vs.<br><br>A.P. KANE,<br><br>Respondent. | No. C 05-3265 MJJ (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner, a California parolee, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2004 decision by the California Board of Parole Hearings ("Board")[1] finding him unsuitable for parole.[2] Respondent has filed an answer, and petitioner has filed a traverse. Thereafter, both parties submitted supplemental briefs.

## BACKGROUND

In 1990, petitioner was convicted in Kern County Superior Court of first-degree attempted murder with use of a firearm and assault with a deadly weapon. He was sentenced to a term of seven years to life plus eight years in state prison. In 2004, the California Board

---

[1] At the time of the decision, the Board was called the California Board of Prison Terms.

[2] In 2006 the Board found him suitable for parole, and he was released from prison. In light of the conclusion below that the petition fails on its merits, the Court need not address respondent's alternative argument that the petition is mooted by the Board's grant of parole in 2006. Moreover, the Court notes that petitioner has shown that he continues to suffer an adverse impact from the 2004 denial of parole insofar as his five-year parole term would end sooner had he been paroled in 2004 instead of 2006.

G:\PRO-SE\MJJ\HC.05\ellisr.dny.wpd

of Prison Terms (the "Board") found him unsuitable for parole for a second time. He challenged this decision unsuccessfully in habeas petitions filed at all three levels of the California courts. On August 30, 2006, following a third Board hearing, petitioner was released on parole for a period of five years.

## DISCUSSION

### A.     Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." Id. at 411.  A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct. 969, 975 (2006).

B.      Analysis of Claim

Petitioner claims that the Board's decision violated his constitutionally protected liberty interest in parole because the decision was not based on "some evidence" that petitioner posed a risk to society.  A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).[3]  The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455.  An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence.  Id.  The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board.  See id.  Additionally, the evidence underlying the Board's decision must have some indicia of reliability.  McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations which guide the Board in making its parole suitability determinations.  California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk

---

[3] Respondent argues that the Ninth Circuit is wrong in finding Hill's "some evidence" requirement applicable to parole denials.  This Court, of course, has no discretion to disregard or overrule applicable decisions from the Ninth Circuit.

G:\PRO-SE\MJJ\HC.05\ellisr.dny.wpd            3

of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code of Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. 15 Cal. Code of Regs. § 2402(d). These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case. Cal. Code of Regs., tit. 15, § 2404(c). Once the prisoner has been found suitable for parole, the regulations set forth a matrix to set a base term. 15 Cal. Code Regs. § 2403(a).[4]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

While subdivision (a) of section 3041 states that indeterminate life (i.e., life-

---

[4]The matrix provides three choices of suggested base terms for several categories of crimes: for attempted first degree murders, the matrix of base terms ranges from the low of 7, 8 or 9 years, to a high of 10, 11 or 12 years, depending on certain facts of the crime. 15 Cal. Code Regs. § 2403(d). One axis of the matrix concerns the relationship between defendant and victim and the other axis of the matrix concerns the amount of harm inflicted. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "minor injury," "victim assaulted," "major injury," or "torture." Each of the choices are further defined in the matrix. Id.

G:\PRO-SE\MJJ\HC.05\ellisr.dny.wpd         4

>   maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original). In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629 (1988).[5]

Here, the Board denied parole on the basis of the facts of petitioner's commitment offense, his prior criminal and social history, his parole plans, and psychological reports.

### A.   Commitment Offense

Under state law, the Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole. Cal. Penal Code § 3041(b); 15 Cal. Code Regs, § 2402(c)(1). The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in " a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense." Id.

The California Supreme Court also has determined that the facts of the crime can

---

[5] In his third claim, petitioner asserts his right to due process was violated because the Board did not apply the matrix under California Penal Code § 3041(a) prior to determining whether he presented a continuing public danger under § 3041(b). As discussed above, Rosenkrantz explicitly held that such an application of § 3041 was proper as a matter of state law, a holding binding on this Court. As the Board's application of § 3041(b) prior to § 3041(a) did not violate state law, it certainly did not violate any state law interest that might be protected by due process.

alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable. "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability. Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

At the parole hearing, the Board recited the facts of petitioner's offense as follows:[6]

> Investigation revealed that Douglas Majors and Sandra Alexander had been at a party at 920 and a half Barlow Street [and] were preparing to leave the residence with the intention of going to Majors' residence.
>
> Laney Adams, [] a resident of 920 and a half Barlow Street told investigators that during the birthday party she was having for her daughter, the victim and defendant had argued outside her residence. She stated the victim and a subject named Dave Newarth [] had ganged up on the defendant. Witnesses saw the defendant take a shotgun from the trunk of his vehicle and point it toward the back of Majors' vehicle and fire one shot. He then threw the shotgun into the [] trunk of his vehicle and drove off. Defendant was later arrested on a warrant in this case. The victim, Douglas Majors was permanently paralyzed as a result of the gunshot wound.
>
> It is noted that Saundra Alexander advised that she and the defendant had known each other for approximately 17 years and approximately eight months prior, she had resumed a relationship with him and given birth to his child on January 19, 1990. Since giving birth to his child, she advised that she had been trying to split up with him and had only been staying with him until he could rent her a residence using his credit history. She stated prior to the shooting

---

[6]At the hearing, petitioner did not object to this factual summary.

>incident she'd been staying with the defendant at a residence of a mutual friend on Barlow Avenue. She stated that three to four months prior she had met the victim and had gone out on a date with him one week prior to the incident. For information purposes she advised that the defendant was retired from the Navy with a mental disability.

(Resp. Ex. 2 at 12-13 (paragraph break added).)

With petitioner's consent, the Board read into the record petitioner's version of the offense from an earlier probation report:

>[Petitioner indicated] he mostly agreed with the facts in the probation officer's report. However, he proceeded to refute almost all of them. His first disagreement is with the date of the instant offense itself. Whereas the probation officer's report indicates that the instant offense occurred on May 16, 1990, Ellis indicates that it was actually March 16, 1990. This date appears to be correct in that the disposition of the arrest and court action located in the legal section of the Central File indicates that the prosecution information on this case was filed on 3/21/90.
>
>Ellis went on to state that the fact about the victim being permanently paralyzed may or may not be true. The doctor at the trial testified that the victim could regain functioning to normal levels . . . The transcript does indicate that when questioned, the victim, Majors, indicated he was able to bring the right calf and foot out just about straight. And that hew as able to bring his left foot and calf out of about a 45-degree angle. He further stated he could feel the sensation of heat and cold.
>
>Ellis continues to proclaim his innocence in referring to the attempted murder. However, he does state that he is remorseful. He claims that he's guilty of shooting an occupied vehicle and the use of the firearm causing great bodily injury. He state that he's sorry that he shot the victim and believes that the victim had a gun.

(Resp. Ex. 2 at 14-15 (paragraph breaks added).)

The foregoing facts of the offense provided some evidence that the crimes were carried out in an "especially heinous, atrocious or cruel manner" under 15 Cal. Code Regs. § 2402(c)(1). Petitioner demonstrated a disregard for the harm and suffering he would cause when he shot a buck shot into an occupied car from behind. Although he did not kill anyone, he certainly could have, and his gun shot paralyzed one of the car's occupants. After shooting the victim, petitioner fled the scene. Moreover, petitioner's motive, jealousy of the relationship between his ex-girlfriend and the victim, was extremely trivial in relation to the offense of attempting to murder, and paralyzing, the victim. Under these circumstances, there is "some evidence" that the commitment offense met the factors set forth in the state's regulations for indicating that the murder was committed in an

"especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.[7]

### B. Additional Factors

There was additional evidence in support of other statutory factors demonstrating unsuitability for parole. To begin with, petitioner's social and criminal history indicated a escalating pattern of criminal conduct. See 15 Cal. Code Regs. §§ 2402(c)(2),(3) & (d)(2). To begin with, at age 17, petitioner was arrested for being AWOL from the Navy. He had two convictions, one for assaulting a peace officer and one for battery, arising out of separate incidents. Petitioner was also arrested on other occasions, including arrests for murder and carrying a weapon.[8] Such a record certainly amounts to "some evidence" of past violence and criminal conduct, statutory factors weighing against granting parole.

The Board commended petitioner for having only one disciplinary rules violation while in prison, but noted that it was for fighting, and praised his participation in self-help, vocational and educational programs. However, the Board also finding that he had failed to accept responsibility for the crimes or explore their causes, a finding supported by the fact that petitioner continued to refute many of the facts of the crime and to assert his innocence, and that he needed to participate further in self-help programs to gain the insight he needed. See 15 Cal. Code Regs. § 2402(d)(3).

Based on the record of the Board's decision, there was "some evidence" that Petitioner was unsuitable for parole under the factors set forth in California's statutes and regulations for determining parole suitability. Consequently, the Board's decision did not violate Petitioner's right to due process, and the state court opinions upholding the Board's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Further, the Board's decision was not based on "an unreasonable determination of the

---

[7] The Court notes the concern expressed by the Ninth Circuit in Biggs v. Terhune that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d 910, 916 (9th Cir. 2003). The Ninth Circuit has recently criticized this statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. In any event, the challenged parole denial here was based on other evidence in addition to the commitment offense and criminal history, as described below, and therefore does not yet implicate the concerns raised in Biggs.

[8] Petitioner was released following his arrest for murder "due to the witnesses not being available."

G:\PRO-SE\MJJ\HC.05\ellisr.dny.wpd        8

facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of Petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: 12/13/07

_____
MARTIN J. JENKINS
United States District Judge